IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Criminal No. 19-134 |
| ) | |
| JERMAINE KYLE CLARK, ) | |
| ) | |
| Defendant. ) | |

OPINION

I.   Introduction

Pending before the court is a motion to compel discovery (ECF Nos. 107, 108)[1], with brief in support filed by counsel for defendant Jermaine Kyle Clark ("Clark"). The government filed a response in opposition to the motion, Clark filed a reply, and the government filed a surreply (ECF Nos. 119, 120, 121). The motion is ripe for disposition.

II.   Factual and Procedural Background

Clark, along with codefendant Terry Suggs, Jr. ("Suggs"), is charged in count 1 of the indictment at Criminal Number 19-134 with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine and 500 grams or more of methamphetamine from February 24- 25, 2019, in violation of 21 U.S.C. § 846. In count 2 of the indictment, Clark is charged with possession of 5 kilograms or more of cocaine and 500 grams or more of methamphetamine on February 25, 2019. The prosecution started in state court, but the federal government adopted the case.

Clark contends that the police investigation of his conduct began on August 7, 2018,

---

[1] The unredacted version at ECF No. 108 is filed under seal. The court determined that this opinion need not be sealed.

1

when a state trooper performed a traffic stop on a car registered to Clark that was traveling on the Pennsylvania turnpike. Clark was not in the car. The occupants allegedly consented to a search of the vehicle. In the ensuing search, officers recovered almost $350,000 in cash from a hidden compartment. The occupants denied knowledge of the money and were released. Clark contends that he was subjected to unconstitutional surveillance since that date. On October 31, 2018, Clark was stopped by a trooper while driving on the Pennsylvania turnpike. Clark consented to a pat-down search. A drug dog sniffed the car and Clark was permitted to leave. Clark contends that when agents applied for a PING warrant and search warrants for two cars in February 2019, they deliberately omitted reference to the earlier investigation because those encounters utilized unconstitutional surveillance.

Clark also contends that the legality of the government's search is dependent on the credibility of a confidential informant ("CI") and Atlas, a drug-sniffing dog. In October 2018, as set forth in the affidavit for probable cause to obtain a PING warrant, the CI informed agents that Clark had been selling him a kilogram of cocaine weekly or biweekly for the last 18-24 months. (ECF No. 108-1).

On February 21, 2019, detectives prepared a "Memo of Request" to intercept oral communications between Clark and the CI. In its surreply brief, the government agreed to produce a version of the "Memo of Request" to defense counsel, with redactions to protect the identity of the CI (ECF No. 121). This aspect of the motion to compel is, therefore, moot.

On or before February 21, 2019, agents were present with the CI and listened to a

conversation with Clark which they interpreted[2] as setting up a drug deal for February 24-25, 2019. Based on that information, agents obtained the PING warrant and began tracking the location of Clark's cell phone. The data showed that the phone was in the Pittsburgh, Pennsylvania area on February 24-25, 2019.

The CI met with Clark on February 25, 2019, and later that day placed 3 recorded calls to him, allegedly to arrange delivery of the drugs. When Clark arrived, Suggs got into Clark's car. Both men were arrested and Clark's and Suggs' cars were towed to the Swissvale police station. Clark notes in his motion that at the preliminary hearing in state court, a detective testified that Clark's warrantless arrest was based on the reliability of the CI. (ECF No 108 ¶ 23). Defense counsel believes that he knows the identity of the CI and, based upon an independent investigation, believes that the CI is not reliable.

Later on February 25, 2019, a K9 officer and drug dog Atlas performed an exterior sniff of Clark's and Suggs' cars at the Swissvale police station. Atlas alerted on both cars. Agents relied on the dog sniff in the affidavit of probable cause to obtain search warrants. In the ensuing search, drugs were recovered from hidden compartments in both vehicles.

In the motion to compel, Clark contends that the search warrant is based on Atlas. In its response, the government agreed to provide a report about Atlas' training and reliability. (ECF No. 119). This aspect of the motion to compel is, therefore, moot.

III.    Legal Analysis

Clark's pending motion does not directly allege government misconduct or seek to

---

[2] Clark maintains this interpretation was unreasonable because there was no obvious reference to drugs.

3

suppress evidence. Instead, the motion seeks discovery to obtain information that Clark hopes will support a potential motion to suppress evidence. Specifically, Clark intends to argue that the government engaged in illegal surveillance in August and October 2018, such that the events of February 2019 are fruit of the poisonous tree, and that agents made material false statements in the PING and search warrant affidavits, which entitle him to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) (a "*Franks* hearing"). Clark did not submit a proposed order. Clark's motion refers to five categories of information: (1) other warrants secured during the investigation; (2) the February 21, 2019 "memo of request"; (3) information about the reliability of the CI or other confidential sources; (4) information about the reliability of Atlas; and (5) unredacted versions of discovery provided by the government. In the motion, defendant also seeks discovery about whether the government illegally surveilled him, which the government interprets as a different way to obtain the "memo of request." Clark's request was phrased somewhat more broadly in the reply brief (ECF No. 120 at 1) (seeking disclosure of evidence the government surveilled him illegally and used the fruits of that surveillance to obtain warrants). Clark maintains this category is not limited to the "memo of request," but he did not identify other documents.

The government initially balked at providing the requested information.[3] As noted above, the government agreed to provide some additional information. The government's current position on each category is: (1) no other warrants exist; (2) a redacted version of the "memo of request" was provided; (3) the CI's identity is not discoverable, although the

---

[3] Clark did not request information about improper conduct in "other investigations" before filing the motion (ECF No. 119 at 8, ECF No. 120 at 17 n.8). The government is unclear what is being requested.

4

government acknowledges its obligation to disclose *Brady* material in time for effective use in a suppression motion; (4) additional materials about Atlas were provided; and (5) the government maintains that redactions to protect the identity of the CI remain appropriate. The government contends that the remainder of the motion to compel should be denied. The remaining issues involve the identity of the CI.

a. Discovery in a criminal case

Discovery in a criminal case is far different from that in a civil case. The government's obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure. Beyond Rule 16, the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady*"), and its progeny, a defendant has no general constitutional right to pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Those rights conferred by rule, statute, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. *United States v. Fiorvanti*, 412 F.2d 407, 411 (3d Cir. 1969). The Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas listed in Federal Rule of Criminal Procedure 16, "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994). Generally, these other areas are limited to the Jencks Act and materials available pursuant to the *Brady* doctrine. *Id*. The court appreciates defendants' frustration with these discovery limitations.

In the Jencks Act, Congress enacted limitations on discovery of reports made by

potential government witnesses. The statute provides: "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); *see* Fed. R. Crim. P. 26.2(a) (court may order government to produce a witness statement after the witness has testified on direct examination). The government typically acknowledges that strict adherence to the Jencks Act could cause delays at trial and therefore agrees to produce Jencks Act material before trial in order not to cause delays. *United States v. Coleman*, No. CRIM. 13-274, 2014 WL 2041545, at *2 (W.D. Pa. May 12, 2014).

The *Brady* doctrine generally is understood as imposing a duty of minimum fairness on prosecutors grounded on a defendant's due process right to a fair trial. *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983). Under *Brady*, the government has a continuing obligation to turn over evidence favorable to the defendant "where the evidence is material either to guilt or punishment." 373 U.S. at 87. In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court further required that the government disclose any impeachment information that it possesses regarding its own witnesses, such as promises for leniency made in return for testimony. *Id*. at 154-55. It is clear that <u>at least</u> shortly before trial, Brady impeachment material must be disclosed "for its effective use at trial." *Higgs*, 713 F.2d at 43-44; *accord United State v. Nazario*, 748 F. App'x 479, 481 (3d Cir. 2018) (no *Brady* violation where government did not disclose statements of cooperating witnesses until three days before trial). Within the Third Circuit there is a long tradition of encouraging early disclosure of *Brady* materials. *See United States v. Starusko*, 729 F.2d

6

256, 264 (3d Cir. 1984) (citations omitted).

Clark cites *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993), and *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990), for the proposition that the *Brady* protections relating to impeachment evidence apply to suppression hearings.  There is a circuit split on this issue.  *United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 2271430, at *29 (D.N.M. Feb. 8, 2017) (concluding that the Supreme Court's holding in *United States v. Ruiz*, 536 U.S. 622, 632 (2002), that prosecutors have no duty to disclose impeachment evidence in change of plea hearings, would be extended to suppression hearings).  The court need not resolve this issue.  In this case, the government acknowledged its obligation to disclose *Brady* impeachment material in time for effective use in a suppression motion.  More importantly, discussion of a suppression hearing is premature because Clark has not yet filed a motion to suppress evidence.  His deadline to do so is June 20, 2020.  Instead, the current motion seeks disclosure of the identity of the CI in advance of a potential suppression motion.

b.  Discovery to disclose identity of government informant

Clark tries to overcome the general prohibition on discovery by alleging government misconduct that violated his due process or Fourth Amendment rights.  In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court explained: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege

7

must give way."[4]  *Id.* at 60–61.

The defendant bears the initial burden to demonstrate a specific need for the disclosure of the informant's identity. *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981).  A generalized hope that the CI's identity will provide a basis for a *Franks* hearing will not suffice. *United States v. Stanton*, 566 F. App'x 166, 168 (3d Cir. 2014) ("Because Stanton hoped that the identity of the confidential informants would provide a basis for a hearing under *Franks* and because the informants' roles pertained to probable cause, we conclude that the District Court did not abuse its discretion in denying Stanton's motion.")[5]; *accord United States v. Rivera*, 524 F. App'x 821, 827 (3d Cir. 2013) (denying motion to compel disclosure of confidential informant based on speculation that the informant might admit that the controlled buys were not from the defendant).

The court must "balance[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. The court should take into consideration "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Jiles*, 658 F.2d at 196-97 (noting a spectrum of participation by a CI ranging from an active and crucial role, as in *Roviaro*, to mere tipsters).  The court summarized the factors that may require an informant's identity to be released: (1) the possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's

---

[4] *But see McCray v. State of Ilinois*, 386 U.S. 300, 309 (1967) ("The *Roviaro* case involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt.").

[5] In *Stanton*, the court also explained that Stanton's guess about the identity of the confidential informants does not constitute the "substantial showing" required to obtain a *Franks* hearing.  566 F. App'x at 168.

identity; and (4) the informer was the sole participant other than the accused, in the transaction charged. *Id.* at 198-99.

A defendant's need to learn the identity of an informant is less compelling in a pretrial suppression hearing than at trial. *United States v. Noble*, No. 1:17CR00005, 2018 WL 4501075, at *2 (W.D. Pa. Sept. 20, 2018). In *United States v. Pitts*, 655 F. App'x 78, 81 (3d Cir. 2016), the court explained: "When a confidential informant's involvement in a case merely goes to probable cause for a search" then "disclosure of his identity is not required." *Accord Rivera*, 524 F. App'x at 827 (because informants' roles were limited to validating the search, district court did not abuse its discretion in denying motion to compel); *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) (en banc) (when the informant's role relates to probable cause for the search, disclosure is usually not required).

Clark argues that it is essential to obtain the information to enable him to challenge the credibility of the witnesses in a suppression hearing or *Franks* hearing. In a *Franks* hearing, the CI's credibility is not directly at issue. Instead, it is the credibility of the affiant (i.e., the officer submitting the affidavit) that matters. As explained in *Rivera*,

> Even if the information provided by the informants was unreliable, Rivera has offered no evidence that the detective who provided the affidavit either knew that the information was not true or recklessly disregarded its falsity. *See Brown*, 3 F.3d at 677 (noting that "it [is] not enough to show simply that the informant may have lied"); *United States v. Perdomo*, 800 F.2d 916, 921 (9th Cir. 1986) (affirming denial of a *Franks* hearing where proof offered reflected only on veracity of informant and not on veracity of affiant).

*Rivera*, 524 F. App'x at 826. The government indicated it was unlikely that the CI would be called as a witness during a suppression hearing (ECF No. 119 at 17). The hypothetical advanced in Clark's reply brief (ECF No. 120 at 10-11) similarly involves a false statement made by a testifying officer, not a CI.

It is unclear how the August 2018 traffic stop relates to the disclosure of the CI's identity, because there is no indication that the CI was involved in that incident. The other argument articulated in Clark's motion is that the CI's participation may have been coerced. This contention is purely speculative. Clark points to no evidence of improper coercion. As the government correctly points out, the fact that a government witness may receive financial benefits or a reduced criminal liability in exchange for cooperation is not inherently improper. *United States v. Antoon*, 933 F.2d 200, 205 (3d Cir. 1991) (reversing district court's finding that fear of prosecution rendered consent to cooperate involuntary).

The court concludes that Clark did not make a sufficient showing to justify disclosure of the CI's identity. Clark is charged with a drug conspiracy and drug possession. The primary evidence against him will be the drugs seized from his vehicle on February 25, 2019. The court recognizes that the suppression of that evidence is an important defense for Clark. The CI's role, as set forth in Clark's motion, was in setting up the drug transaction. The government represents that the CI will testify at trial. Although the CI's possible testimony will likely be highly relevant at trial, Clark did not articulate why the CI's testimony would be important at a suppression hearing or *Franks* hearing. Clark has not alleged entrapment or doubts about his identity. The CI was not the sole participant in the telephone calls to set up the transaction and many officers were involved in the events of February 25, 2019.

In sum, Clark failed to articulate a sufficient basis for disclosure of the CI's identity at this stage of the case. *See Noble*, 2018 WL 4501075, at *1 (denying similar motion to disclose an informant's identity on the theory that it would enable the defendant to challenge the allegations in an affidavit of probable cause to be "willfully false" and lead

to a successful suppression motion); *United States v. Mayhams*, No. 3:16-CR-127, 2018 WL 6524394, at *7 (M.D. Pa. Dec. 12, 2018) (denying motion to compel discovery without prejudice to the defendant's ability to raise the issue if she did not timely receive *Brady* and Jencks Act materials).

Conclusion

After thorough review and consideration of the parties' arguments and submissions, Clark's motion to compel (ECF No. 107, 108) will be denied. The court concludes that there is no basis to order the government to produce the discovery requested by Clark at this time. The government has represented that it is aware of, and will comply with, all its obligations to produce discovery. This opinion and order is without prejudice to Clark's ability to assert his rights if the government fails to do so.

An appropriate order follows.

Dated: June 5, 2020

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge